SENIOR JUSTICE WHITING
delivered the opinion of the Court.
The issue in this case is the admissibility of a prior tax evaluation of property being condemned to impeach the credibility of the property owners’ appraiser.
The Commonwealth Transportation Commissioner (the Commonwealth) filed eminent domain proceedings to acquire a 39.125-acre parcel of land owned by Johnny C. and Phyllis Russell (the Russells) in Lee County. At trial, the Russells sought to qualify Ed Stacy, the *619 sole proprietor of a real estate appraisal firm, a certified general real estate appraiser, and tax assessment evaluator, as an expert witness familiar with the value of real estate in Lee County.
In attempting to establish his general knowledge of Lee County real estate values on September 27, 1996, the date of the condemnation, Stacy testified on direct examination that he and members of his firm had been “involved” in the 1996 Lee County tax reassessment. Stacy said that in order to make the reassessment, they conducted a study of all real estate sales in Lee County during 1995 and the first half of 1996, after which they valued real property in the county.
Stacy further testified that approximately three years later, he appraised the Russells’ condemned property to determine its fair market value as of September 27, 1996. Stacy stated that on that date the fair market value of the 39.125-acre parcel was $12,538 per acre. During the Commonwealth’s cross-examination of Stacy, it sought to elicit, as impeachment evidence, testimony from Stacy concerning his firm’s earlier tax valuation of the 39.125-acre parcel at $1,000 per acre. The Russells objected to this line of questioning, asserting that evidence concerning tax assessments was not relevant in a condemnation proceeding.
During argument on this objection, counsel for the Russells did not disagree with the statements of the trial court and the Commonwealth’s counsel that Lee County real estate tax appraisals were at the 100 percent rate of fair market value. Instead, counsel responded that Stacy could explain the difference in the two appraisals of the 39.125-acre parcel. The trial court overruled the Russells’ objection and allowed the questioning for purposes of impeachment. Stacy then explained that the appraiser in his firm who performed the tax assessment valuation “had no way of knowing that this piece of property actually was part of or previously a part of a much larger property that was right across from where this four-lane [highway] was going into[,] which would significantly [a]ffect this piece of property.” Stacy also stated that the appraiser “most likely . . . had no aware[ness] of this scenic easement that was placed on the property.” Stacy further explained that based on these considerations, “that’s where the $1,000.00 an acre [in the tax evaluation] came from.”
At the conclusion of the trial, the commissioners returned a report valuing the condemned parcel at $5,140 per acre. Overruling the Russells’ exceptions to the commissioners’ report, the trial court entered an order confirming the report.
*620 On appeal, the Russells argue that the trial court abused its discretion in allowing the Commonwealth to cross-examine Stacy concerning his firm’s valuation of the property for tax assessment purposes. The Russells assert that “[r]eal estate tax assessments are generated for reasons wholly unrelated to the criteria which govern eminent domain proceedings” and that the purpose of this type of valuation, to determine relative property values, is fundamentally different from the purpose of an appraisal in a condemnation proceeding, which is to compensate landowners fully for the loss of then-property. Thus, the Russells contend that evidence of tax valuations was improper impeachment evidence regarding Stacy’s valuation of the property to determine just compensation.
In response, the Commonwealth argues that the trial court properly allowed Stacy to be cross-examined concerning his earlier valuation of the property, because that valuation was a prior inconsistent statement made by Stacy and his firm about the value of the condemned property. Thus, we consider whether the prior valuation of the Russells’ land made for tax assessment purposes presented an inconsistency bearing on the credibility of Stacy’s valuation testimony at trial.
Fundamental principles govern this issue. In Virginia, real property is to be appraised or evaluated at its fair market value when fixing the amounts to be paid as just compensation in condemnation cases and when determining what amounts will be paid as real estate taxes. See Lynch v. Commonwealth Trans. Comm’r, 247 Va. 388, 393, 442 S.E.2d 388, 389, 391 (1994) (condemnation); Va. Const, art. X, § 2; Code § 58.1-3201 (tax purposes). In certain instances, uniformity considerations might affect tax assessments because Article X, § 1 of the Virginia Constitution requires “uniformfity] upon the same class of subjects within the territorial limits of the authority levying the tax.” Uniformity considerations are usually involved when multiple or different methods were used by the taxing jurisdiction to determine the fair market value of various properties within a class of properties. Cross v. City of Newport News, 217 Va. 202, 206, 228 S.E.2d 113, 116 (1976); Skyline Swannanoa v. Nelson County, 186 Va. 878, 881, 44 S.E.2d 437, 439 (1947).
A second fundamental consideration is that the credibility of a witness may be impeached by showing that the witness made statements on a prior occasion that are inconsistent with his present testimony. Breeden v. Roberts, 258 Va. 411, 415-16, 518 S.E.2d 834, 837 *621 (1999). And, we said in Spruill v. Commonwealth, 221 Va. 475, 485, 271 S.E.2d 419, 425 (1980):
[The] determination of the scope of cross-examination in general, and of the extent of testimonial impeachment in particular, should be “left largely to the sound discretion of the trial court; and the rule is well established that an appellate court will not interfere, unless that discretion has been plainly abused.” (Citation omitted.)
In applying these principles to the facts in this case, we note that the record does not indicate that the tax evaluations made by Stacy’s firm for the 1996 Lee County reassessments were based on any other consideration than that of fair market value. In fact, when Stacy attempted to explain the inconsistency in the two appraisals, he mentioned only his tax appraiser’s ignorance of two factors that Stacy said would have affected the appraiser’s evaluation of the fair market value of the 39.125-acre parcel. Not only is there no evidence that uniformity considerations or different methods of evaluation affected the tax evaluations made by Stacy’s group of the 39.125-acre parcel, but neither Stacy nor the Russells claim that either of these considerations had any effect on Stacy’s firm’s 1996 Lee County tax assessments.
Thus, there appeared to be an inconsistency in Stacy’s testimony of the September 25, 1996 value of the 39.125-acre parcel at $12,538 per acre and his firm’s evaluation of the same property for the tax year 1996 at $1,000 per acre. Given (1) the wide disparity in the appraisals; (2) Stacy’s use of his firm’s 1996 sales studies for the tax appraisals to establish his general knowledge of Lee County real estate; and (3) Stacy’s testimony that these tax sales studies “had a bearing” on his opinion of the value of the 39.125-acre parcel, we think that the prior tax evaluation could have been considered by the condemnation commission to properly assess the weight of Stacy’s expert testimony. Hence, we find no abuse of the trial court’s discretion in permitting this impeachment evidence on cross-examination. Accordingly, the judgment of the trial court will be

Affirmed.