UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Athey and Senior Judge Humphreys
Argued at Lexington, Virginia

JOHN ADAM RICHARDSON

v.        Record No. 0804-24-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE ROBERT J. HUMPHREYS
SEPTEMBER 23, 2025

FROM THE CIRCUIT COURT OF HENRY COUNTY
James R. McGarry, Judge

Samantha Offutt Thames, Senior Appellate Counsel (Virginia
Indigent Defense Commission, on briefs), for appellant.

Sandra M. Workman, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The trial court convicted John Adam Richardson of threatening to bomb or burn a

structure.  Based on the conviction, the trial court revoked a previously suspended sentence.  On

appeal, Richardson argues that the trial court abused its discretion by excluding evidence of his

mental health history under Code § 19.2-271.6.  He also argues that the evidence was insufficient

to sustain his conviction, and the trial court abused its discretion in sentencing him on both the

new offense and the revocation.  Finding no error, we affirm the trial court.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing

party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  In doing so, we discard any evidence that

conflicts with the Commonwealth's evidence, and regard as true all the credible evidence

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

Richardson lived with his mother, Rhonda Shelton, and his nine-year-old son. Shelton had custody of the child. One day, Richardson became agitated because "nobody would tell him anything about his son." Shelton tried to "de-escalate things," reminding Richardson that his son was in the home and Richardson saw him daily. Not satisfied, Richardson shoved his son and repeatedly called Shelton a "dumb, ignorant bitch." Richardson took the family's cell phones, preventing Shelton or the child from contacting police.

While Richardson "knocked TV trays across the living room," Shelton left the home and went to the carport while the child ran to a neighbor's house to contact police. Richardson followed Shelton closely, continually insulting her. He then picked up a partially filled gas canister from the ground, held it upside-down over Shelton's head, and told her "two or three different times" that he would "burn it all down" and "take [the house] to the ground." Shelton was terrified. She "could smell the gas," and Richardson unsuccessfully tried to ignite it with a lighter. Though the gas canister had a safety cap that prevented the gas from spilling out, Shelton feared that the lighter could ignite the fumes.

Shelton and Richardson "struggled over the gas can" until neighbors exited their homes to investigate the disturbance. Then, Richardson "flipped a switch," stopped suddenly and went inside the home. He then returned with a permanent marker and threatened to write "dumb, ignorant bitch" on Shelton's car. Shelton stood between Richardson and her car; Richardson eventually returned to the house, locked the door, and began cooking hamburgers. When officers arrived they found Richardson "very agitated . . . yelling and cussing."

Fewer than 60 days before trial, Richardson filed a notice of his intent to introduce evidence of his mental condition at the time of the offense, under Code § 19.2-271.6. The court considered

the matter immediately before trial. The Commonwealth noted that it had not received any mental health records or notice of any experts Richardson planned to call at trial and asked the trial court to exclude any such evidence. Richardson argued that the statute did not require him to "turn over any evidence unless it was created or made in connection with this case," and because no such documents had been created, he had nothing to turn over. The trial court stated that it would evaluate the evidence "as it [came] in."

At trial, Richardson asked Shelton if he had been diagnosed with bipolar schizophrenia. The Commonwealth objected, arguing that Shelton was not qualified to discuss Richardson's mental health or its impact on his criminal culpability. Richardson responded that Shelton's testimony about him "flipping a switch" opened the door to questions about his mental health. The trial court ruled that though Shelton had testified about Richardson's behavior, she had not mentioned any mental illnesses, so the question was beyond the scope of direct. Richardson interjected, "[w]ell no, Judge. I think she talked about, and the Commonwealth opened the door, about him flipping a switch and de-escalating." The trial court reiterated its ruling and Richardson responded, "I understand, Judge."

After the close of the evidence, Richardson moved to strike, arguing that the Commonwealth had not established a "true threat" to commit arson. Richardson noted that his behavior was highly erratic, he had a history of mental health struggles, and he never actually opened the gas canister. The Commonwealth responded that Richardson stated repeatedly that he was going to "burn it all down" and tried to ignite a lighter as he held the gas canister. The trial court denied the motion to strike, convicted Richardson of threatening to bomb or burn, and continued the matter for sentencing.

At the time of the offense, Richardson was on probation for an unlawful wounding conviction with three years and eight months' suspended sentence. Richardson's probation officer

filed a major violation report on December 28, 2023, after his arrest for threatening to bomb or burn. The report noted that since beginning probation, Richardson had also been charged with assault on a law enforcement officer and obstruction of justice. The Commonwealth nolle prossed the assault charge, but Richardson was convicted of obstruction of justice and sentenced to twelve months' incarceration with all but one month suspended.

At a combined sentencing and probation revocation hearing, Shelton testified that Richardson's actions had "haunted" her and the child; she asked the court to sentence Richardson to the maximum legal sentence. Richardson proffered, without objection, a list of his mental health diagnoses, including "schizoaffective disorder, bipolar, anxiety disorder, and some other . . . specific personality disorders." He also submitted completion certificates for 16 programs he had taken while incarcerated and claimed he had adjusted well to probation before his arrest on the underlying offense. Richardson admitted that he "was wrong that day" but denied Shelton's version of events. He acknowledged that his actions had long-lasting consequences for both him and his family. He claimed to have been sober for three years up to that point and that he had made marked improvement since being placed on probation. Richardson asked the court to consider imposing a sentence at the low end of the sentencing guidelines.[1]

The Commonwealth countered that the facts of the offense were egregious. It also stressed Richardson's lack of remorse, observing that he "shook his head every time his mother spoke today." Noting the impact of the event on Shelton and the child, the Commonwealth requested a sentence above the discretionary sentencing guidelines. Finding that Richardson had not demonstrated any apparent remorse for his actions, the trial court sentenced Richardson to three years' incarceration for threatening to bomb or burn, and two years' incarceration in his probation

---

[1] The discretionary sentencing guidelines recommended a sentence between 11 and 39 months' incarceration for the primary offense, and 8 to 24 months for the revocation.

revocation case. As the court sentenced him, Richardson told Shelton, "I hope you rot in hell, bitch."

ANALYSIS

I.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of this contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). "Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity." *Hogle v. Commonwealth*, 75 Va. App. 743, 755 (2022) (quoting *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019)). "Not just any objection will do. It must be both specific and timely—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Bethea*, 297 Va. at 743). "If a party fails to timely and specifically object, he waives his argument on appeal." *Id.* (citing *Arrington v. Commonwealth*, 53 Va. App. 635, 641 (2009)). Indeed, "Rule 5A:18 applies to bar even constitutional claims." *Clark v. Commonwealth*, 78 Va. App. 726, 767 (2023) (quoting *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004)).

Richardson argues that the trial court erred by not allowing him to cross-examine Shelton about his mental health history. He contends that cross-examination is a fundamental right and the excluded evidence was relevant under Code § 19.2-276.1 and "extremely pertinent" to his argument that he lacked the requisite intent. He maintains that he complied with the statutory notice requirements to admit the evidence, so the trial court abused its discretion by excluding it. He also

- 5 -

argues that evidence of his "mental health status was not outside the scope of" Shelton's direct examination, because she had testified to several facts that "clearly" implicated his "mental health," including that he "flipped a switch" after threatening her.

At trial, Richardson argued that the evidence was admissible because it was relevant to demonstrate his mental health and, therefore, intent. The trial court, however, did not address that argument or even rule on the evidence's admissibility. Instead, it simply held that Richardson could not cross-examine Shelton regarding a particular mental health diagnosis because it was beyond the scope of direct examination. *See Berry v. Commonwealth*, 20 Va. App. 32, 35 (1995) ("If the question is 'relevant to the facts testified to' by the witness on direct examination or if the question tends 'to test the veracity or credibility of the witness,' the question is proper." (quoting *Williams v. Commonwealth*, 128 Va. 698, 713 (1920))). In response, Richardson argued, "Well no, Judge. I think she talked about, and the Commonwealth opened the door, about him flipping a switch and de-escalating." Given those circumstances, the only argument he preserved for appeal was that he had not exceeded the scope of direct. Although Rule 5A:18 contains exceptions for good cause or to meet the ends of justice, Richardson has not invoked either exception and we do not consider them sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023). Thus, Rule 5A:18 bars us from considering the other issues raised in this assignment of error.

"[C]ross-examination of a witness is limited to matters elicited on direct examination." *Smith v. Irving*, 268 Va. 496, 501 (2004). Determining the permissible "scope of cross-examination in general, and of the extent of testimonial impeachment in particular, should be 'left largely to the sound discretion of the trial court; and the rule is well established that an appellate court will not interfere, unless that discretion has been plainly abused.'" *Russell v. Commonwealth Transp. Comm'r of Va.*, 261 Va. 617, 621 (2001) (quoting *Spruill v. Commonwealth*, 221 Va. 475, 485 (1980)). "Therefore, if counsel's attempted cross-examination of a witness addresses matters

- 6 -

exceeding the scope of direct examination, a court's refusal to allow this cross-examination will be approved on appeal as a proper exercise of the court's discretion." *Smith*, 268 Va. at 501.

Richardson specifically asked Shelton if she knew of his bipolar schizophrenia diagnosis. Shelton did not mention Richardson's mental health diagnoses or conditions during her testimony. Instead, she focused on Richardson's extreme anger and violent behavior, as well as her own fear during the incident. Although she testified that Richardson's behavior "flipped a switch," that statement does not unambiguously reference Richardson's mental health, especially when viewed together with her testimony that neighbors had begun to exit their homes to view the disturbance. Accordingly, the trial court did not abuse its discretion by concluding that Richardson's question exceeded the scope of direct examination.

## II.

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from

the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Challenging the sufficiency of the evidence, Richardson asserts that a reasonable person would not have believed that he intended to burn down his own home. He stresses that his family knew of his mental health struggles and were familiar with these types of outbursts. He also argues that he understood gas would not escape the canister given the closed cap. All of this taken together, Richardson contends, demonstrates that his actions were "mere hyperbole of expression" because "he was livid, and wanted his mother to understand."

"Any person . . . who makes and communicates to another by any means any threat to bomb, burn, destroy or in any manner damage any place of assembly, building or other structure" is guilty of threatening to bomb or burn. Code § 18.2-83. "A conviction under Code § 18.2-83 requires proof both that the communication included a threat made by the defendant and that he acted with the necessary intent." *Drexel v. Commonwealth*, 80 Va. App. 720, 734 (2024).

"[A] threat is 'a communication avowing an intent to injure another's person or property. To constitute a threat, the communication must also 'reasonably cause the receiver to believe that the speaker will act according to his expression of intent.'" *Id.* at 735 (alteration in original) (quoting *Howard v. Commonwealth*, 74 Va. App. 739, 756 (2022)). "For a threat to be punishable from a constitutional standpoint, at a minimum, the offender must have 'consciously disregarded a substantial risk that his communications would be viewed as threatening violence.'" *Id.* at 737 (quoting *Counterman v. Colorado*, 600 U.S. 66, 79 (2023)). The Commonwealth need not prove malice. *Summerlin v. Commonwealth*, 37 Va. App. 288, 294 (2002). "'Proof that [the defendant] intended to make and communicate the threat' satisfies Code § 18.2-83's mens rea requirement." *Drexel*, 80 Va. App. at 736-37 (alteration in original) (quoting *Howard*, 74 Va. App. at 756).

Here, the evidence established that Richardson was enraged and behaving erratically the day of the offense. After verbally and physically harassing his family, Richardson held a partially full gas canister upside-down over his mother's head while striking a lighter and repeatedly shouting that he would "burn it all down." Richardson tried several times to ignite the lighter and avoided dousing Shelton with gasoline only because the canister had a safety cap. This evidence supports a finding that Richardson's communications and actions caused Shelton to believe that he would act according to his expressed intent. Thus, the evidence established a "threat" within the intendment of Code § 18.2-83.

"Intent may be shown by a person's conduct and by his statements." *Long v. Commonwealth*, 8 Va. App. 194, 198 (1989). When Richardson held a gas canister over her head, struck the lighter, and shouted that he was going to "burn it all down," it was reasonable for Shelton to assume that Richardson intended to carry out his threat. Indeed, by all appearances Richardson was actively attempting to do so. Those circumstances demonstrate that his statements were not "mere hyperbole."

Emphasizing that his behavior "flipped a switch," Richardson argues that we should view the incident as one of a momentary mental crisis. Viewed in the light most favorable to the Commonwealth, however, the evidence suggests that he stopped threatening his mother only after neighbors came outside. Thus, the factfinder could have determined that he stopped his threats not because of his mental health crisis, but because others were present, causing him to leave the scene. "Under settled principles, a fact finder may infer a criminal defendant's 'consciousness of guilt from his efforts to avoid detection.'" *Clark v. Commonwealth*, 78 Va. App. 726, 754 (2023) (quoting *Aley v. Commonwealth*, 75 Va. App. 54, 68 (2022)). Given these circumstances, the trial court did not err in denying Richardson's motion to strike.

III.

"Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 563 (2016). "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.* "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Id.* at 564 (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565).

Richardson argues that the trial court abused its discretion in sentencing him to a combined five years' incarceration for his new offense and for violating the terms of probation. He claims that the trial court did not give adequate weight to the educational and therapeutic programs he had completed while awaiting sentencing. The record demonstrates, however, that the court considered those circumstances, but it was not required to give them controlling effect. *Sheets v. Commonwealth*, 80 Va. App. 706, 718 (2024). Indeed, the trial court was free to conclude that the aggravating circumstances of the offense—the trauma he caused Shelton and his nine-year-old child—outweighed the mitigating impact of the programs Richardson had completed. Richardson's sentence of three years' incarceration does not exceed the statutory limit. Code §§ 18.2-10, -83. Thus, "our task is complete." *Thomason,* 69 Va. App. at 99.

Richardson also argues that the trial court abused its discretion by revoking two years of his previously suspended sentence. Subject to certain conditions not at issue here, "in any case in which the court has suspended the execution or imposition of sentence, the court may revoke the

- 10 -

suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A). Upon determining that a defendant has violated the terms of his suspended sentence, a trial court may revoke that suspension and "impose a sentence in accordance with the provisions of [Code] § 19.2-306.1." Code § 19.2-306(C). The circuit court "may revoke the suspension and impose or resuspend any or all of that period previously suspended" for a criminal offense committed after the date of the suspension. Code § 19.2-306.1(B).

Richardson did not comply with the terms of probation, and he committed new criminal offenses during the suspension period. Indeed, despite his assertions that he was adapting well to probation, he was charged with four new offenses within a short time of his release from custody. His continued disregard for the law demonstrated that Richardson was not amenable to rehabilitation. "When coupled with a suspended sentence, probation represents 'an act of grace on the part of the Commonwealth to one who has been convicted and sentenced to a term of confinement.'" *Hunter v. Commonwealth*, 56 Va. App. 582, 587 (2010) (quoting *Price v. Commonwealth*, 51 Va. App. 443, 448 (2008)). Richardson spurned the grace that had been extended to him.

"For probation to have a deterrent effect on recidivism, real consequences must follow a probationer's willful violation of the conditions of probation." *Price*, 51 Va. App. at 449. After reviewing the record in this case, we conclude that the sentence the trial court imposed represented a proper exercise of its discretion. *See Alsberry v. Commonwealth*, 39 Va. App. 314, 321-22 (2002) (finding the court did not abuse its discretion by imposing the defendant's previously suspended sentence in its entirety "in light of the grievous nature of [the defendant's] offenses and his continuing criminal activity").

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*