COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Friedman, Raphael and White
Argued at Richmond, Virginia


AMBER-LYNN SIARA ROMERO

                                                    MEMORANDUM OPINION* BY
v.         Record No. 1549-24-2                     JUDGE STUART A. RAPHAEL
                                                       DECEMBER 16, 2025
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
                        William E. Glover, Judge

          Monica Tuck, Assistant Public Defender (Virginia Indigent Defense
          Commission, on briefs), for appellant.

          Victoria Johnson, Senior Assistant Attorney General (Jason S.
          Miyares, Attorney General, on brief), for appellee.


        Appealing her conviction for felony parental abduction in violation of Code

§ 18.2-49.1(A), Amber-Lynn Siara Romero claims that the Commonwealth failed to prove that

she wrongfully withheld her child K.H. out of state.  She further claims that some of the trial

court's evidentiary rulings precluded her from mounting a full defense.  Though Romero did not

raise the argument below, she also assails her sentencing order as void ab initio because it

conditioned her suspended time on a good-behavior period that exceeds the maximum period of

punishment allowed under the statute.  Finding no reversible error, however, we affirm.

                                    BACKGROUND

        We recite the facts in the light most favorable to the Commonwealth, the party that

prevailed at trial.  *Camann v. Commonwealth*, 79 Va. App. 427, 431 (2024) (en banc).  "Doing

so requires that we 'discard' the defendant's evidence when it conflicts with the

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

Commonwealth's evidence, 'regard as true all the credible evidence favorable to the Commonwealth,' and read 'all fair inferences' in the Commonwealth's favor." *Id.* (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

*A. Hale and Romero's relationship history*

Romero and Malik Hale are the biological parents of two minor children. This appeal involves only their eldest child, K.H. Romero and Hale started dating while in high school in New York. Romero was 18 years old when she gave birth to K.H. Upon graduating in 2015, Romero stayed in New York and Hale moved with his parents to Virginia. Romero and Hale traveled back and forth between Virginia and New York, staying "several weeks or days at a time." Eventually, they started living together at Hale's parents' house. In March 2018, they welcomed their second child.

After the couple parted ways in May 2018, Hale petitioned the Spotsylvania juvenile and domestic relations district court to determine custody of K.H. and her younger sister. By order dated November 7, 2018, the JDR court granted the parties joint legal and physical custody. The children lived permanently at Hale's parents' house in Spotsylvania.[1]

In December 2021, Romero petitioned to amend the 2018 custody order, seeking full custody of the children and permission to move them to New York. Finding the children's connection to New York "tenuous at best," the JDR court denied the petition.

After Romero appealed that ruling, the circuit court awarded Hale primary physical custody, while Romero retained joint legal custody. Romero was granted visitation on the first, second, and fourth weekend of every month. The court rendered its decision on August 31, but

---

[1] Romero and Hale reconciled following the November 2018 custody ruling, living with Hale's parents. But in January 2021, they permanently separated.

the final order was not entered until September 13, 2022. Romero told Hale that "the court order wasn't sufficient enough for her."

### B. Romero's custody-order violation

Romero had visitation on the second weekend of September 2022. Under the custody order, she was supposed to return the children to Hale on September 11, no later than 6:00 p.m. K.H. was running errands that day with her grandparents (Romero's mother and stepfather), and Romero had the younger child. Before drop-off with Hale, K.H. allegedly told her grandmother that Hale was sexually abusing her, that Hale's father was physically abusing her, and that she and her sister did not have enough food to eat. When Romero's mother related that information, Romero told her to keep K.H. "until [they] figured out what was going on." Romero returned the younger child to Hale as scheduled, telling him that her mother would eventually bring K.H. to a convenience store near his house.

Romero's mother did not return K.H. to Hale. Instead, she took K.H. to be examined at a hospital in Washington, D.C. Based on the abuse allegations, a social worker at the hospital contacted Spotsylvania Child Protective Services (CPS). The next day (September 12), Romero filed for a protective order in the Bronx, where she lived. K.H. stayed with Romero's mother.

On September 13, Romero and her mother took K.H. to Spotsylvania for a CPS interview. CPS requested a follow-up forensic interview with K.H. to further understand the nature of her allegations about Hale and his father. That interview took place at Safe Harbor in Fredericksburg on September 20. In the week between interviews, Romero and K.H. stayed with Romero's mother in Lexington Park, Maryland.

When Hale learned that Romero had enrolled K.H. in school in Lexington Park, he contacted law enforcement to coordinate picking up K.H. at the school. But when Hale arrived, K.H. was not there.

Hale filed a "motion for emergency hearing" in the Spotsylvania circuit court.[2]  The court issued an emergency order on September 23, 2022, finding that Romero had violated the September 13 custody order by failing to return K.H. and by "withholding" her since September 9.  The circuit court found that Romero had "filed frivolous pleadings in the State of New York, County of the Bronx, seeking an order of protection" and that she had "made false allegations regarding child abuse to the Spotsylvania Department of Social Services."  Based on those findings, the court awarded Hale "sole legal and physical custody of the parties' minor children" and ordered that Romero "have no visitation or contact until further notice of this Court."  Romero was not present at the emergency hearing.

Romero kept K.H. until early November.  After spending time in Maryland, Romero took K.H. to New York and New Jersey.  She then took K.H. to Pennsylvania to visit a friend.  Romero posted photos of K.H. to her social media throughout their travels.  Hale inferred from the posts that Romero "didn't plan on giving [K.H.] back" to him.

The U.S. Marshals Service—which had been contacted by Spotsylvania detectives— located K.H. during the Pennsylvania visit.  Hale's friend retrieved K.H. from Pennsylvania on November 3, 2022.  Hale was reunited with K.H. the next day.  Romero was arrested in Pennsylvania and extradited to Virginia.

*C. Romero's trial and sentencing*

In January 2023, a grand jury indicted Romero for knowingly, wrongfully, and intentionally withholding K.H. from her "custodial parent or guardian in a clear and significant violation of a court order . . . in violation of [Code] § 18.2-49.1."  The case proceeded to a one-day jury trial on May 23, 2024.

---

[2] The record does not include Hale's motion or a transcript from the emergency hearing.

During opening statements, when Romero's counsel suggested that Romero withheld K.H. based on the alleged abuse by Hale and his father, the Commonwealth lodged a hearsay objection. The Commonwealth added that the abuse allegations were already "subject to a court hearing and the court found that [they were] fraudulent." At a sidebar conference, Romero's counsel conceded that the allegations were found to be false but assured the court that she was "using them for the effect on the listener," not for their truth. The Commonwealth retorted that Romero should not get "the benefit of committing another fraud upon the court."

The court ordered that counsel not mention the abuse allegations or frivolous legal filings during opening statements nor question witnesses on those topics without the court's permission. The court explained, "This is a multiple layered evidentiary problem, because I don't know who made the allegations . . . . We'll have to find our way through that carefully." The court told the jury, "[w]hen I sent you out before, [defense counsel] had just mentioned in her opening some accusations that had been made. My ruling is that you are to disregard that and not pay any attention to that."

Romero faced several evidentiary setbacks at trial. To start, the court limited her cross-examination of Detective Kaitlyn Herzig on the extent of her investigation into K.H.'s abuse allegations. Herzig had testified for the Commonwealth on direct examination that in October 2022, she swore out a warrant against Romero and, with help from another detective, "reached out to the U.S. Marshals Service" to locate Romero and K.H. Herzig had also notified Hale when K.H. had been found, putting him in touch with another detective to bring her home. Based on that limited direct examination, the trial court prohibited Romero's counsel from cross-examining Herzig "about the investigation she did into this matter."

When Romero testified in her own case-in-chief, the trial court sustained the Commonwealth's hearsay objection, preventing Romero from recounting what her mother had

said about K.H.'s claims of abuse. Outside the presence of the jury, defense counsel proffered "that Ms. Romero was told by her mother that [K.H.] had been complaining of abuse and that her mother had taken her to a hospital." Romero argued that this evidence showed that she "was legally justified in withholding her child." Romero was not acting wrongfully, her proffer continued, "because she was trying to protect her child from physical and sexual abuse." Defense counsel argued that the statement was not hearsay because it was not offered for its truth; rather, "it completely explains what happen[ed] in this case." The court ruled that Romero could not explain her state of mind "by her belief that what the statement said was true."

Despite that ruling, however, Romero was permitted to testify that she developed concerns about K.H.'s well-being based on a conversation with her mother. Romero said that she was concerned that K.H. "wasn't safe at her father's house." She feared that K.H. would be abused because there were "multiple allegations against [Hale] and his father as well." Romero believed on September 11—the day that K.H. was not returned to Hale—that K.H. was "in danger." Based on those concerns, Romero told her mother to keep K.H. until they "figured out what was going on and what [the child's] complaints were."

Romero further explained that she was in court in the Bronx on September 12 and 13, and that afterward she took K.H. "to the CPS interview in Spotsylvania." CPS interviewed K.H. based on Romero's concerns. Romero was further permitted to testify that CPS requested "a forensic interview to get . . . in deeper detail what was going on in the complaint [K.H.] was making towards her father and her grandfather and the household she was staying in." Herzig corroborated that testimony when she was recalled in Romero's case-in-chief.

Lastly, Romero sought to testify about the protective order she claimed to have obtained in New York. When defense counsel asked Romero if the Bronx court issued an order, she responded, "yes, they did, a protective order." The court sustained the Commonwealth's

relevance and foundation objections.  Without proffering the contents of the protective order, Romero testified only that she was "in court discussing matters that involve [K.H.]."

The court admitted four orders at trial: the JDR court's original custody order (November 2018); the JDR court's amended custody order (December 2021); the circuit court's custody order (September 13, 2022); and, over Romero's objection, the circuit court's emergency custody order (September 23, 2022).[3]

After the trial court denied Romero's motions to strike, the jury found her guilty of felony parental abduction in violation of Code § 18.2-49.1(A).

Hale and his father testified at the sentencing hearing, explaining how Romero's actions disrupted their lives and traumatized K.H.  The court sentenced Romero to one year of incarceration (except for time served), all suspended.  It conditioned the suspended time "on good behavior for a period of ten years."  Romero did not object to that condition.  She now appeals.

ANALYSIS

Romero challenges the sufficiency of the evidence, the trial court's evidentiary rulings described above, and the ten-year good-behavior condition of her suspended sentence.

*A. Sufficiency of the evidence (Assignment of Error I)*

"A motion to strike challenges whether the evidence is sufficient to submit the case to the [factfinder]." *Fergeson v. Commonwealth*, 84 Va. App. 80, 89 (2025) (alteration in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 223 (2013)).  Because the Commonwealth prevailed below, we review the evidence in the light most favorable to it. *Id.* "Whether the

---

[3] Romero objected because the order contained "statements that were a very different burden of proof with no background as to any evidentiary proceedings or what was heard."  The court instructed the jury that it could "only consider the order as a basis upon which the detective relied in the obtaining of the charge that is before the Court now."

evidence is sufficient to prove the elements of a crime 'is a factual finding, which will not be set aside on appeal unless it is plainly wrong.'" *Id.* (quoting *Lawlor*, 285 Va. at 223-24). When, as here, the defendant "introduces evidence on [her] own behalf after the denial of a motion to strike the Commonwealth's evidence, any further challenge to the sufficiency of the evidence at trial or on appeal is to be determined from the entire record[,]' including the defendant's own testimony.'" *Camann*, 79 Va. App. at 442 (second alteration in original) (quoting *Carosi v. Commonwealth*, 280 Va. 545, 554 (2010)). Statutory interpretation involves a question of law that we review de novo. *Fergeson*, 84 Va. App. at 89.

Code § 18.2-49.1(A) provides that "[a]ny person who knowingly, wrongfully and intentionally withholds a child from either of a child's parents or other legal guardian in a clear and significant violation of a court order . . . , provided such child is withheld outside of the Commonwealth, is guilty of a Class 6 felony." Romero argues that because Code § 18.2-49.1(A) uses the words "knowingly, wrongfully and intentionally," the Commonwealth had to show that she "acted with the specific intent to violate the law when she withheld K.H." from Hale. She says that her concerns for K.H.'s safety negated her alleged wrongful intent.

Five years ago, we held that *wrongful* in Code § 18.2-49.1(A) "means unlawful or contrary to the law." *Boyd v. Commonwealth*, 72 Va. App. 274, 281 (2020). The appellant in *Boyd* withheld his son for two weeks based on allegations that the mother was physically abusing the child. *Id.* at 276-78. When Boyd was charged with felony parental abduction, he argued that the evidence was insufficient to show that his actions were wrongful. We disagreed. Despite Boyd's "attempt to justify his actions, the evidence was manifest that he acted in direct contravention" of the custody order. *Id.* at 281. Boyd "unilaterally chose" to take his son out of state, did not communicate his plans to do so, and "did not seek an emergency hearing" to get

custody "while the child abuse case was investigated." *Id.* So "the evidence [was] sufficient to support the court's conclusion that his actions were wrongful, as required by the statute." *Id.*

The same is true here. Even crediting Romero's argument that she went to court in New York and took K.H. to two CPS interviews, the other evidence suggests that Romero deliberately concealed K.H. from Hale. After learning that K.H. was enrolled at a school in Maryland, Hale contacted local police for help retrieving her. But K.H. was no longer at the school when Hale arrived. Romero avoided contact with Hale and her other child for the entire period she withheld K.H.—almost two months. Based on Romero's social media postings about K.H., Hale believed that Romero "didn't plan on giving her back."

Romero unilaterally chose to take K.H. out of state and thwarted Hale's attempts to retrieve her. Despite the custody order from the Spotsylvania court, Romero never sought a protective order in that court. Although she claimed at trial that she tried to file a motion for an "emergency hearing to change custody or visitation," no such evidence appears in the record. Detective Herzig testified that she could not serve Romero with the parental-abduction warrant because, "by all accounts, it was very unlikely that she would be located in Virginia." It was not until Spotsylvania detectives teamed up with the U.S. Marshals Service that Romero and K.H. could be located.

Taking the evidence in the light most favorable to the Commonwealth, the jury could find that the Commonwealth proved each element of the parental-abduction charge beyond a reasonable doubt.

### B. *Trial court's evidentiary rulings (Assignment of Error II)*

Romero's second assignment of error challenges four of the trial court's evidentiary rulings. We address each in turn.

### 1. *The opening-statement ruling*

Romero argues that the court's opening-statement ruling improperly precluded her from later introducing evidence of K.H.'s abuse allegations and the New York protective order. Not so.

At the time of the ruling, the court said, "for the moment," that neither party could mention the "allegations or the protective order, or the allegedly false protective orders, or other frivolous filings in New York." That restriction applied only to opening statements; both parties needed "permission of the Court" to ask later questions "regarding that" information. Because the information posed "a multiple layered evidentiary problem," the court explained, all parties "would have to find [their] way through that carefully." The court's ruling thus expressly held open the possibility of later admitting that information with the court's permission. We find no abuse of discretion in the court's decision to prevent both sides from mentioning during opening statements either the abuse allegations or the protective order.

### 2. *Detective Herzig's cross-examination*

Romero argues that the court should have allowed her to cross-examine Herzig about "her full investigation," including "the abuse allegations." Had that testimony come in, she claims, it would have shown her "efforts to lawfully have her concerns investigated, negating any wrongful intent." But Romero's brief fails to address the court's actual ruling: that her desired line of questioning went beyond the scope of Herzig's direct examination.[4]

Decisions regarding the admissibility or exclusion of evidence are reviewed for abuse of discretion. *Smith v. Irving*, 268 Va. 496, 501 (2004). "[T]he cross-examination of a witness is

---

[4] Romero's brief states that "the trial court ruled that this line of cross-examination was 'prohibited.'" But there was more to it than that. The court held that "because of the way the questions were asked on direct, there wasn't any basis from the Court's perspective, there wasn't any basis to allow cross-examination with respect to the investigation of the abuse."

limited to matters elicited on direct examination." *Id.* (quoting *Duncan v. Carson*, 127 Va. 306, 318 (1920)). So "if counsel's attempted cross-examination of a witness addresses matters exceeding the scope of direct examination, a court's refusal to allow this cross-examination will be approved on appeal as a proper exercise of the court's discretion." *Id.* (quoting *Russell v. Commonwealth*, 261 Va. 617, 621 (2001)).

Those common-law rules have been codified in the Virginia Rules of Evidence. "Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." Va. R. Evid. 2:611(b)(i). Although a "court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination," *id.*, it is not required to do so.

Herzig testified that she swore out a warrant against Romero for parental abduction. She explained how and why that warrant was served outside of Virginia. Lastly, Herzig testified that she connected Hale with another detective to bring K.H. home from Pennsylvania. Because that was the extent of Herzig's direct examination, and Herzig did not mention any investigation into K.H.'s abuse allegations, it was proper for the trial court to prohibit Romero's inquiry into that subject.

### 3. K.H.'s abuse allegations

Romero alleges that the trial court erred by excluding as inadmissible hearsay her attempt to recount her mother's statements about K.H.'s abuse allegations. Romero claims that the statements were not hearsay because they were being offered only for their effect on Romero, not for the truth that K.H. was being abused.

"Hearsay is an out-of-court statement 'offered to prove the truth of the matter asserted.'" *Jones v. Commonwealth*, 71 Va. App. 70, 90 (2019) (quoting Va. R. Evid. 2:801(c)). Hearsay is generally inadmissible unless an exception applies. Va. R. Evid. 2:802.

Assuming without deciding that the statements were offered for their effect on Romero, and thus were not hearsay, we conclude that their exclusion was harmless. "[E]videntiary errors are subject to non-constitutional harmless error review." *Jones*, 71 Va. App. at 91. "A non-constitutional error is deemed harmless when [this Court] 'can conclude that the error did not influence the jury or had but slight effect.'" *Shaw v. Commonwealth*, 304 Va. 217, 234 (2025) (quoting *Commonwealth v. Kilpatrick*, 301 Va. 214, 216 (2022)). In a criminal case, that means this Court "must be able to conclude that if the error had not occurred, the jury still would have convicted the defendant." *Id.* In other words, "'the evidence of guilt must be so overwhelming that it renders the error insignificant by comparison such that the error could not have affected' the outcome." *Id.* (quoting *Kilpatrick*, 301 Va. at 217).

That is true here. Romero was permitted to testify that there were "multiple accusations" against Hale and his father and that she believed K.H. was "in danger" on September 11. She believed that K.H. "wasn't safe at her father's house." The jury also heard that Romero developed those beliefs from speaking with her mother, whom Romero trusted and who had close contact with K.H. Romero was also allowed to testify that on September 13—two days after K.H. made the allegations—she and her mother took K.H. to a CPS interview. K.H. did a second interview to go deeper into the allegations that she "was making towards her father and grandfather and the household she was staying in." So the jury knew Romero's theory that her actions were not wrongful because she was trying to protect her daughter and feared for her daughter's safety. *See Johnson v. Commonwealth*, 85 Va. App. 257, 291 (2025) (finding the exclusion of the expert's testimony harmless when other evidence supported Johnson's theory that he accidentally shot his wife).

The jury also had other evidence suggesting that Romero was not motivated by her daughter's safety. For the almost two-month period that she kept K.H. out of Virginia, she never

communicated with Hale or her other daughter.  Her social media posts suggested that she would not return K.H. to Hale.  She traveled with K.H. from Maryland to New York, to New Jersey, and eventually to Pennsylvania.  Despite using the New York court system, Romero made no attempts to secure a protective order in Virgina.  Nor is there evidence in the record to support her assertion that she tried to obtain an emergency custody order from the Spotsylvania court that had issued the original custody order.

Given the totality of the evidence presented, the excluded statements would not have affected the outcome.  By the end of trial, the jury understood the factual basis for Romero's theory that her actions were not wrongful.  Even assuming for argument's sake that the trial court erred in excluding Romero's testimony about what her mother heard from K.H., any such error was harmless.

### 4. The New York protective order

Lastly, Romero argues that she should have been permitted to testify about getting a protective order in New York.  The trial court excluded that evidence as irrelevant and lacking in foundation.  Romero counters that if she did not lay the proper foundation, it "was due to the court's prior exclusion of such evidence."  She maintains that the evidence was relevant because it proved that she sought legal help out of concern for K.H.'s safety, showing she lacked "wrongful intent."

Romero's argument fails for two reasons.  First, as shown above, the court's ruling during opening statements did not prevent Romero from later seeking to introduce the protective order.  She just needed to lay a foundation and ask permission to do so, which she did not do.

Second, Romero failed to proffer the contents of the New York protective order.  "[A] party who wishes to challenge the trial court's exclusion of evidence on appeal must provide a proffer of that evidence that is adequate to permit this Court to determine whether the lower

- 13 -

court erred." *Smith v. Commonwealth*, 72 Va. App. 523, 541 (2020). Without a proffer of the contents of the New York protective order, "this Court is unable to determine whether any such information was relevant and admissible and whether its exclusion was prejudicial." *Id.*

Thus, we cannot say that the trial court erred in excluding evidence of the protective order.

### C. Romero's sentencing (Assignment of Error III)

Although she did not raise the issue below, Romero argues that the good-behavior-for-ten-years condition on her suspended sentence was void ab initio. She asks us to excuse her failure to contemporaneously object under the ends-of-justice exception in Rule 5A:18.[5]

Code § 19.2-303.1 provides that "[i]n any case where a court suspends the imposition or execution of a sentence, it may fix the period of suspension for up to the statutory maximum period for which the defendant might originally have been sentenced to be imprisoned." Romero's conviction of a Class 6 felony permitted a maximum punishment of five years' incarceration. The trial court sentenced her to one year of incarceration, all suspended, except for the time served. The court erred, to be sure, by conditioning the suspended time on ten years of good behavior; under Code § 19.2-303.1, the trial court was authorized to impose a good-behavior condition for only five years.

Romero relies on *Rawls v. Commonwealth*, 278 Va. 213 (2009), where the Supreme Court said that "a sentence imposed in violation of a prescribed statutory range of punishment is void ab initio because 'the character of the judgment was not such as the [C]ourt had the power to render.'" *Id.* at 221 (alteration in original). But Romero fails to address *Hannah v. Commonwealth*, 303 Va. 106 (2024), which held that "any error arising from a misapplication of

---

[5] Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."

Code § 19.2-303.1 would render a judgment voidable at most," so the defendant must object at sentencing for the error to be "properly preserved for appellate consideration." *Id.* at 124.

What is more, we declined in *Cisneros v. Commonwealth*, 82 Va. App. 147 (2024), to apply *Rawls* when the trial court resuspended Cisneros's sentence for a period of time "in excess of the grant of authority contained in Code § 19.2-306."[6] *Id.* at 166. The "validity of the suspension period itself," we said, was not invalidated by *Rawls* because it was not "a 'new sentence' nor a 'new punishment.'" *Id.* at 168. In other words, the "failure to comply with the statutory parameters for reimposing and/or resuspending the original sentence is voidable error that must be preserved in accordance with Rule 5A:18." *Id.* at 169 (citing *Terry v. Commonwealth*, 81 Va. App. 241, 253-54 (2024)). Notably, we rejected Cisneros's request to invoke the ends-of-justice exception. *Id.* at 170. Although Cisneros's revocation "orders imposed periods of suspension in violation of Code § 19.2-306(C)," his continued violations were "within the statutorily permitted timeframe," so he could "not affirmatively show a miscarriage of justice." *Id.* at 172.

*Hannah* and *Cisneros* control the outcome here. The good-behavior-for-ten-years condition, though erroneous, was only voidable error. Romero had to object to give the trial court the opportunity to fix the mistake. The ends-of-justice exception "is narrow and is to be used sparingly." *Cisneros*, 82 Va. App. at 170 (quoting *Pulley v. Commonwealth*, 74 Va. App. 104, 126 (2021)). For the exception to apply, Romero "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Id.* Romero

---

[6] When a defendant violates the terms of a suspended sentence, Code § 19.2-306(C) allows the court to "revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1." The court can then "suspend all or any part of this sentence for a period up to the statutory maximum period for which the defendant might originally have been sentenced, less any time already served, and may place the defendant upon terms and conditions or probation." Code § 19.2-306(C).

cannot make that showing here.  For like the appellant in *Cisneros*, Romero has not yet been subject to suspension for future misconduct occurring "outside the statutory time limits."  *Id.* at 173.  Thus, the ends-of-justice exception does not excuse Romero's procedural default.

CONCLUSION

The evidence sufficed for the jury to find Romero guilty of parental abduction, and we find no other basis to disturb the trial court's evidentiary rulings or its sentencing order.

*Affirmed*.